100    597
38SC  376

## Garrett's Appeal.

A. leased certain property to B. at an annual rental, it being agreed that C. as factor for B., should sell all the iron manufactured on said premises, and pay over the proceeds to A. A., after deducting rents and certain charges, was to pay over any balance that might remain to B. A. thereupon opened a ledger account, in which he entered, on the debit side, certain advances from time to time made by him to B., and also the monthly charges for rent. On the credit side, he entered the sums received from C. and a few other small items. Nothing appeared in the ledger to indicate any appropriation of the payments appearing as credited to B. A. at length distrained upon the goods on the premises for the whole rent in arrear from the beginning of the lease. The day before the sale, B. confessed a large judgment to D. with intent to defraud, hinder and delay A. A fi. fa. was issued on said judgment which was levied on the goods. Subsequently, said goods were sold under both the distress and fi. fa., and the proceeds were paid into court for distribution,—*Held*, that the action of A. in issuing the distress for all the rent from the beginning of the lease constituted an election on his part not to apply any part of the credits on account of said rent,—*Held*, further, in view of the circumstances, that, had he not made such appropriation, the court would have done so for him, on the ground that the indebtedness outside the lease was least secured, and that the claim as landlord did not come in conflict with that of an honest creditor,—*Held*, therefore, that A. was entitled to the whole amount of rent distrained for, from the fund.

[Garrett's Appeal.]

April 20th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

APPEAL from the Court of Common Pleas of *Schuylkill county :* Of July term 1882, No. 15.

Appeal of F. H. Garrett from a decree of the said court distributing the proceeds of a sheriff's sale of the personal property of D. Longenecker, Jr. The said property was sold under a fi. fa., upon a judgment confessed by said Longenecker to F. H. Garrett June 30th 1880, and also under a landlord's warrant issued June 11th 1880 for rent claimed to be due by said Longenecker to the Philadelphia and Reading Coal and Iron Co., which accrued within the preceding year. On motion of F. H. Garrett, the court directed the sheriff to pay into court the proceeds of said sale, $6,197.61, and the court appointed Wm. B. Wells, Esq., as auditor to report distribution thereof, before whom the material facts appeared to be as follows :—

On October 6th 1879, the Philadelphia and Reading Coal and Iron Co. executed a lease to David Longenecker, Jr., of the "Ringgold furnace property" situated in Schuylkill county, reserving a stipulated rental per ton on all iron manufactured at the furnace. On the same day, an agreement was entered into between the Philadelphia and Reading Coal and Iron Co., David Longenecker, Jr., and Cabeen and Co., by the terms of which Cabeen and Co., as factors of Longenecker, were to sell all the iron manufactured at said furnace during the term of the lease, and to pay over the proceeds to the Coal and Iron Co., which company, after deducting rents and certain charges, were to pay over any balance that might remain to Longenecker.

In pursuance of this lease and agreement, Longenecker operated the furnace for about eight months, until June 6th 1880, when he stopped.

During this period, the Philadelphia and Reading Coal and Iron Co. made large advances to Longenecker to enable him to work the furnace. From time to time, during the same period, the Philadelphia and Reading Coal and Iron Co. received large sums from Cabeen and Co. for account of Longenecker. The ledger account of the Philadelphia and Reading Coal and Iron Co. with Longenecker showed on its debit side the several advances so made and also the monthly charges for rent; and, on its credit side the credits paid by Cabeen and Co., with a few other credits of small amounts. The ledger account was the only account of general debits and credits between the said company and Longenecker, to which all other accounts were posted. The said credits were entered therein without anything to indicate any appropriation of the same or any part thereof to the charges for rents or advances respectively; and no specific appropriation of such credits was made at the

times of payment by either Longenecker or the Coal and Iron Co. This ledger account showed on June 6th 1880, when Longenecker suspended working the furnace, a balance due the company by Longenecker of $36,071.96.

The total amounts of rents accrued during the operation of the furnace, without deducting any credits, was $6,028.23, for which amount the Coal and Iron company on June 11th 1880, issued a landlord's warrant, under which the sheriff of the county, as bailiff, distrained the goods of Longenecker found on the premises and advertised five hundred and fifty tons of pig iron to be sold on the first of July, 1880. Longenecker was duly notified of the distress and did not replevy the goods.

On June 30th 1880, the day before this sale was to take place Longenecker confessed a judgment to F. H. Garrett for $5,000, upon which a fi. fa. was issued the same day. In pursuance of this writ, the sheriff on July 1st again levied on the same property of Longenecker, subject to the distress on the landlord's warrant. He postponed and re-advertised the sale of the property, which was sold July 30th 1880, under both writs and the proceeds were paid into court as aforesaid.

The auditor reported that the said judgment confessed by Longenecker to Garrett was without consideration, and was made for the purpose of hindering and delaying the Coal and Iron company in the collection of its claim as landlord, and was therefore void as to said company.

The Coal and Iron company claimed the entire fund, on the ground that in the absence of any appropriation of the credits by the debtor, the creditor had the right to make such appropriation ; and that by issuing the landlord's warrant for the full amount of rent accrued, the creditor in fact appropriated said credits to the advances. Further, that even if this act did not constitute such an appropriation by the creditor, yet in the absence of any appropriation by either the debtor or creditor, the law would apply the credits in the manner most beneficial to the creditor, and therefore to the debt least secured, to wit, the advances.

The auditor held, however, that in the absence of any special appropriation by either party at the time the payments or credits were made, the entering of the credits by the Coal and Iron company to the general credit of the account for rents and advances was, in effect, an appropriation of such credits to the discharge of the debits in the order they stood charged on the books. The auditor also held that in cases such as this the law will appropriate the credits to the oldest items in the account. The auditor's calculation upon this basis showed that the balance of rents due the Coal and Iron company at the date of the issuing of the warrant (less a due proportion of the credits)

was $2,312.63, which amount he awarded to the said Coal and Iron company, and he awarded the remainder of the fund, $3,642.90, to F. H. Garrett on account of his execution.

Exceptions filed to the auditor's report by the Philadelphia & Reading Coal and Iron Company were sustained by the court, PERSHING, P. J., holding, in an opinion filed, that the judgment confessed by Longenecker to Garrett being fraudulent and void as to the Coal and Iron company, Garrett had no claim to the fund in distribution. A decree was entered that the fund realized from the sale under the landlord's warrant be applied to the payment of rent due · the Philadelphia & Reading Coal and Iron Company, as set forth in said warrant.

Thereupon F. H. Garrett took this appeal, assigning for error the above decree.

*S. A. Garrett* and *James Ryon*, for the appellant.—The auditor found as a fact that the amount of rent due was $2,312.63. The court, without reversing that finding, held that Garrett could claim nothing in the distribution, on the ground that his judgment was confessed by Longenecker with intent to defraud creditors, and the court awarded the whole fund to the landlord. The confession of said judgment, however fraudulent in intent, being subsequent to the lien acquired by the landlord under the warrant and distress, could in no wise affect that prior lien, and therefore cannot be deemed fraudulent as to the landlord. As between the parties, it was of course valid, and the property having been sold both under the landlord's warrant and the execution on the judgment, and there being no other creditors claiming the fund, Garrett was clearly entitled to the balance of the fund after the payment of the amount of rent actually due, and the auditor's distribution should have been confirmed.

The auditor was clearly right in holding that the credits in the general running account between the Coal and Iron company and Longenecker should be applied to the charges in the order of their date : Chester Tube Co. *v.* Whittington, 8 W. N. C. 479 ; United States *v.* Kirkpatrick, 9 Wheat. 737–8 ; Berghaus *v.* Alter, 9 Watts 386 ; Reed *v.* Ward, 22 P. S. R. 144 ; Pierce *v.* Sweet, 33 P. S. R. 151 ; Hollister *v.* Davis, 54 P. S. R. 508 ; Moore *v.* Kiff, 78 P. S. R. 96 ; 5 American Law Register 264. The issuing of the landlord's warrant for the full amount of rents accrued, without deducting any credits, was an afterthought and in no sense a legal appropriation by the landlord of all the credits to the items in the account other than rent. It was, on the contrary, an excessive distress, for which the lessee had a right of action against the landlord and bailiff. This right should have been administered equitably by the court

in favor of Garrett upon the distribution, as it was a matter directly involved in ascertaining who was legally entitled to the fund.

*James Ellis*, for the appellees.—Where no application of payments is made by the debtor or creditor, the law will apply them in the way most beneficial to the creditor, and therefore to the debt which is the least secured: Pierce *v.* Sweet, 9 Casey 151; McKelvey *v.* Jarvis, 6 Norris 414; Souder *v.* Schechterly, 10 Norris 87; 5 American Law Reg. (N. S.) 198 and 257; 1 American Lead. Cases, 339, &c.; McQuaide *v.* Stewart, 12 Wright 198; Watt & Co. *v.* Hoch, 1 Casey 411; Johnson's Appeal, 1 Wright 268; Foster *v.* McGraw, 14 P. F. Smith 470.

But the Coal and Iron company did actually make an appropriation of the payments to items of the account other than the rent, and issued a landlord's warrant for the collection of the rent by distress. As Longenecker had no other bonâ fide creditor to be affected thereby, the company had a right to make such appropriation at that time: 1 American Leading Cases, 344, &c.; 5 American Law Register (New Series) 199.

Mr. Justice MERCUR delivered the opinion of the court, October 2d 1882.

The auditor found as a fact that the judgment on which the appellant claims was given to hinder, delay and defraud the creditors of Longenecker, especially the appellee, and was therefore void as against the creditors sought to be defrauded. This finding was clearly justified by the evidence, and was confirmed by the court. The auditor further found that at the time the distress was made Longenecker was actually indebted to the appellees in the sum of $36,071.96 in excess of all credits. The warrant of distress issued for the sum of $6,028.23. The sum for distribution exclusive of all costs was $5,955.53. An amount of rent exceeding that sum had actually accrued within the year preceding, on the lease. Whether it had been paid depended on the manner of applying Longenecker's credits. As the appellees had applied them, this sum remained unpaid for rent. By the method of application adopted by the auditor he found that only $2,312.63 remained unpaid as rent, and reported that sum only for the appellee. The court disapproved of this conclusion, and gave the whole fund to the appellee. This presents the alleged error.

The well-recognized rule is, that a debtor has the right, at his election, to make the appropriation of payments. If he omits it, the creditor may make it. If both omit it, the law will apply the payments according to its own notions of justice. It is too late for either party to claim a right to make the

appropriation at the time or after a controversy has arisen in regard to the appropriations: United States *v.* Kirkpatrick, 9 Wheat. 720. When the aid of the law is invoked several rules have been declared. One, that the payment shall be applied in discharge of the earliest liabilities of a running account; another, that it shall be applied in the way most beneficial to the creditor, and therefore to the debt least secured, unless to the prejudice of a surety: Pierce *v.* Sweet, 9 Casey 151.

In the present case the indebtedness outside of the lease was least secured. The appellee could not distrain for the collection of that, nor claim its payment out of the proceeds of a sheriff's sale made by another. No question of surety exists in this case. The claim of the landlord does not even come in conflict with that of an honest creditor. In fact, however, the appellee did apply the credits on other indebtedness of Longenecker. This application was made in issuing the warrant of distress for the rent without applying the credits thereon. They were thereby applied on the other indebtedness in an unmistakable manner.

The auditor did not give due weight to the equitable rights, and to the action of the creditor. In disregarding them, and in applying the credits on the earliest indebtedness, he arrived at an erroneous conclusion as to the sum due for rent.

The court therefore correctly decreed that the whole fund be paid to the appellee.

　　　　Decree affirmed and appeal dismissed at the costs of the appellant.